HENRY RANDALL REINNINGER, Employee, Plaintiff v. PRESTIGE FABRICATORS, INC., Employer, KEY RISK MANAGEMENT SERVICES, Carrier, Defendants

No. COA99-282

(Filed 30 December 1999)

## 1. Workers' Compensation— additional medical treatment— relation to original compensable injury—rebuttable presumption

In a case where plaintiff-employee requested additional medical treatment under N.C.G.S. § 97-25 for a back injury, the Industrial Commission's opinion must be remanded for a new determination of causation because it is unclear whether plaintiff was given the benefit of the rebuttable presumption that the treatment is directly related to the original compensable injury of 16 January 1995, and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury.

## 2. Workers' Compensation— credibility determination—deference to deputy commissioner

The Industrial Commission did not fail to perform its fact-finding function when it deferred to the credibility determination of the deputy commissioner concerning plaintiff-employee's alleged back injury because the Commission stated in its finding that the deputy commissioner found plaintiff was not credible, and then stated facts as noted by the deputy that tended to show plaintiff was not credible.

## 3. Workers' Compensation— company treating physician—private communications—exclusion of testimony not required

Although plaintiff-employee argues the testimony of Dr. Simpson, defendant-employer company's treating physician, should be excluded and not considered by the Industrial Commission based on alleged ex parte communications with the

employer, the Commission did not err in admitting the doctor's testimony because: (1) plaintiff has presented no evidence that the doctor engaged in any ex parte communications with defendants regarding his treatment of plaintiff, and it will not be assumed without supporting evidence; (2) any such communications would not only violate the rule of the Salaam case, but also the ethical standards of the doctor's profession; and (3) any alleged bias by the doctor as an employee of the employer goes to the credibility of his testimony.

### 4. Workers' Compensation— company treating physician— knowledge not imputed to employer

Even though the general rule is that the principal is charged with the knowledge of his agent, ex parte communications between the company physician and the company or the company's attorney in a workers' compensation case are not inferred or imputed when the agent has a reason or motive to withhold facts from his principal, such as the doctor's ethical obligation to withhold confidential communications of his patients.

Appeal by plaintiff from opinion and award filed 30 November 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 December 1999.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellant.*

*Teague, Rotenstreich and Stanaland, L.L.P., by Michael D. Holt, for defendant-appellants.*

GREENE, Judge.

Henry Randall Reinninger (Plaintiff) appeals from a 30 November 1998 opinion and award of the North Carolina Industrial Commission (Commission) in favor of Prestige Fabricators, Inc. (Employer) and Key Risk Management Services (collectively, Defendants).

On 16 January 1995, Plaintiff was injured while working for Employer when he slipped and fell on a wet floor in Employer's break-room. As a result of this accident, Plaintiff and Employer entered into an agreement for compensation pursuant to North Carolina Industrial Commission Form 21. The agreement stated Plaintiff "sustained an injury by accident arising out of and in the

REINNINGER v. PRESTIGE FABRICATORS, INC.

[136 N.C. App. 255 (1999)]

course of . . . employment [with Employer]" on 16 January 1995, and the accident resulted in "back pain." The agreement was approved by the Commission on 14 March 1995 pursuant to N.C. Gen. Stat. § 97-82. Plaintiff remained out of work from 17 January 1995 until 30 January 1995.

On 9 January 1997, Plaintiff requested a workers' compensation hearing on the ground Defendants refused to pay Plaintiff additional compensation pursuant to N.C. Gen. Stat. § 97-25 for the injury received from his 16 January 1995 compensable injury.

John Larry Simpson, M.D. (Dr. Simpson), medical and safety director for Klaussner Furniture Industries, the parent company of Employer, testified he treated Plaintiff following his 16 January 1995 injury. Plaintiff indicated he was experiencing pain in his left shoulder, posterior neck, low back, and upper hip area, and Dr. Simpson testified the "predominant symptoms deal[t] with left-sided neck, shoulder, [and] arm pain." When Dr. Simpson saw Plaintiff for a follow-up visit on 30 January 1995, Plaintiff did not report any pain in his low back. Dr. Simpson's records indicated he saw Plaintiff on 12 October 1995, and Plaintiff complained at that time of low back pain. Plaintiff told Dr. Simpson the pain began when he was lying on his sofa at home, felt a spasm, and "jumped up off the couch and felt a catch in his back."

Richard Albert Blase, D.C. (Dr. Blase), a doctor of chiropractic, testified he treated Plaintiff on 15 May 1996 for a low back condition. Plaintiff told Dr. Blase the condition "was a gradual onset of a duration of approximately three weeks" and the condition was not work-related. Dr. Blase testified Plaintiff's previous neck and shoulder pain did not relate to this lower back pain. He also testified, however, that Plaintiff's pain in 1996 could have been part of a "continuum of medical problems." His findings indicated Plaintiff was "not necessarily in poor spinal health but not in good spinal condition structurally."

On 26 February 1998, the Deputy Commissioner denied Plaintiff's section 97-25 compensation claim for medical treatment. Plaintiff appealed to the Commission.

On 30 November 1998, the Commission made the following pertinent findings of fact:

25. There is insufficient medical evidence from which to determine by its greater weight that [P]laintiff's absence from

work since May 1996 is causally related to [P]laintiff's compensable injuries of . . . 16 January 1995.

26. The evidence tends to show that any disability after May 1996 is related to an alleged injury in late April or May 1996. There is no Form 21 agreement wherein [D]efendants would have accepted the compensability of any such injury; accordingly, [P]laintiff is not entitled to a presumption of continuing disability and retains the burden of proving his disability claim.

27. . . . [T]he Deputy Commissioner found that she was unable to accept as credible [P]laintiff's allegations that he was, at the time of the hearing, disabled as the natural and direct result of his compensable injuries. This credibility determination was based in part on [P]laintiff's demeanor and in part on the medical records and other credible evidence of record. The [Commission] defers to this credibility determination. As the Deputy Commissioner noted, in October 1995 [P]laintiff maintained that his low back pain was not work related. He maintained this position again when he sought treatment in May 1996. He later changed his position and told his physicians, and testified, about another work-related incident in May 1996. If the low back pain was related to [the] compensable injury of . . . 16 January 1995, it would have become symptomatic before October 1995.

The Commission entered the following pertinent conclusions of law:

"1. Plaintiff's complaints of low back pain in October 1995, May 1996, and continuing did not result from [P]laintiff's injuries by accident on . . . 16 January 1995. . . .

. . . .

3. Plaintiff is not entitled to have [D]efendants provide medical treatment arising from [P]laintiff's lower back complaints . . . ."

The issues are whether: (I) Plaintiff had the burden of proving the back injury for which he requested additional medical treatment, pursuant to N.C. Gen. Stat. § 97-25, was causally related to his compensable injury of 16 January 1995; (II) the Commission failed to make credibility determinations and therefore failed to perform its fact-finding function; and (III) Employer engaged in *ex parte* communications with Dr. Simpson relating to his treatment of Plaintiff.

I

**[1]** Plaintiff argues the Commission erroneously placed on him the burden of proving the medical treatment he now seeks is causally related to his compensable 16 January 1995 injury. We agree.

Subsequent to the establishment of a compensable injury under the North Carolina Workers' Compensation Act, an employee may seek compensation under N.C. Gen. Stat. § 97-25 for additional medical treatment when such treatment "lessens the period of disability, effects a cure or gives relief." *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 541-42, 485 S.E.2d 867, 869 (1997) (citing *Little v. Penn Ventilator Co.*, 317 N.C. 206, 345 S.E.2d 204 (1986)). Any claim for additional medical compensation must be made within "two years after the employer's last payment of medical or indemnity compensation" unless the employee, prior to the expiration of the two-year period, files a claim for additional medical compensation, or the Commission orders additional medical compensation on its own motion. N.C.G.S. § 97-25.1 (Supp. 1998).

In an action for additional compensation for medical treatment, the medical treatment sought must be "directly related to the original compensable injury." *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996). If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury. *Id.*

In this case, Plaintiff and Defendants entered into an agreement for compensation, pursuant to North Carolina Industrial Commission Form 21, for an injury sustained by Plaintiff on 16 January 1995. The agreement stated, in pertinent part, that Plaintiff "sustained an injury by accident arising out of and in the course of . . . employment [with Employer]" on 16 January 1995, and this accident resulted in "back pain." The agreement was approved by the Commission, pursuant to N.C. Gen. Stat. § 97-82, on 15 March 1995, and therefore constitutes an award of the Commission. N.C.G.S. § 97-82 (Supp. 1998); *Glenn v. McDonald's*, 109 N.C. App. 45, 48, 425 S.E.2d 727, 730 (1993).

In its 1998 opinion and award, the Commission found as fact that "[t]here is insufficient medical evidence from which to determine by its greater weight that [P]laintiff's absence from work since May 1996

REINNINGER v. PRESTIGE FABRICATORS, INC.

[136 N.C. App. 255 (1999)]

is causally related to [P]laintiff's compensable injuries of . . . 16 January 1995." Although the findings are far from clear, they appear to indicate the Commission failed to give Plaintiff the benefit of the presumption that his medical treatment now sought was causally related to his 1995 compensable injury. The better practice in these section 97-25 hearings is for the Commission to clearly delineate in its opinion and award that it is giving Plaintiff the benefit of the *Parsons* presumption. Because Plaintiff was entitled to such a presumption, we remand this case to the Commission for a new determination of causation.

## II

**[2]** Plaintiff contends the Commission failed to review the evidence and make credibility determinations and, therefore, failed to perform its fact-finding function. We disagree.

In an action for workers' compensation, the Commission is the ultimate fact finder. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998). While our courts have recognized that when the Commission reviews a cold record "the hearing officer is the best judge of the credibility of witnesses because he is a firsthand observer of witnesses," *Pollard v. Krispy Waffle*, 63 N.C. App. 354, 357, 304 S.E.2d 762, 764 (1983), the Commission is ultimately responsible for making its own determinations of credibility, *Adams*, 349 N.C. at 681, 509 S.E.2d at 413.

In this case, Defendants contend the Commission did not perform its fact-finding function under *Adams* when it deferred to the credibility determination of the Deputy Commissioner in the following finding of fact:

> [T]he Deputy Commissioner found that she was unable to accept as credible [P]laintiff's allegations that he was, at the time of the hearing, disabled as a natural and direct result of his compensable injuries. This credibility determination was based in part on [P]laintiff's demeanor and in part on the medical records and other credible evidence of record. The [Commission] defers to this credibility determination. *As the Deputy Commissioner noted*, in October 1995 [P]laintiff maintained that his low back pain was not work related. He maintained this position again when he sought treatment in May 1996. He later changed his position and told his physicians, and testified, about another work-related incident in May 1996. . . . (Emphasis added.)

Contrary to Plaintiff's contention, the Commission's finding demonstrates it did consider credibility when reviewing the facts of this case, and did not blindly defer to the credibility determination of the Deputy Commissioner. The Commission stated the Deputy Commissioner found Plaintiff not credible, and the Commission then stated facts, as "noted" by the Deputy Commissioner, tending to show Plaintiff was not credible. The Commission, therefore, properly performed its fact-finding function concerning the credibility of the witnesses.

## III

[3] The essence of Plaintiff's final argument is that because Dr. Simpson is an employee of Employer, any knowledge gained by Dr. Simpson in his treatment of Plaintiff, a fellow employee, is imputed to Employer, and this necessarily violates the teaching of *Salaam v. N.C. Dept. of Transportation*, 122 N.C. App. 83, 468 S.E.2d 536 (1996), *disc. review dismissed*, 345 N.C. 494, 480 S.E.2d 51 (1997). It thus follows, Plaintiff contends, Dr. Simpson's testimony must be excluded and not considered by the Commission. We disagree.

In a workers' compensation case, a physician may not engage in *ex parte* communications with the defendant. *Id.* (citing *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990)). Plaintiff, however, has presented no evidence Dr. Simpson engaged in *ex parte* communications with Defendants regarding his treatment of Plaintiff. Any such communications would violate not only the rule of *Salaam*, but also the ethical standards of Dr. Simpson's profession, *see* American Medical Association, *Code of Medical Ethics* § 5.05 (1998-99) ("physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law"), and we will not assume, without supporting evidence, that Dr. Simpson has acted unethically, *see Jenkins v. Public Service Co. of N.C.*, 134 N.C. App. 405, 414-15, 518 S.E.2d 6, 11 (1999) (appellate court will not assume rehabilitation professional acted unethically). On this record, therefore, the Commission did not err in admitting Dr. Simpson's testimony.[1]

[4] Furthermore, we reject Plaintiff's contention that *ex parte* communications between the company physician and the company or the company's attorney are necessarily inferred. We acknowledge the

---

1. Any alleged bias by Dr. Simpson, as an employee of Employer, goes to the credibility of his testimony. *See Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (" 'Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " (citation omitted)).

general rule that the principal is chargeable with the knowledge of his agent. 3 Am. Jur. 2d *Agency* § 281, at 784-85 (1986). When, however, the agent has a reason or motive to withhold facts from his principal, the "knowledge of the agent is not imputed to the principal." *Id.* § 290, at 794. In this case, Dr. Simpson has an ethical obligation to withhold the confidential communications of his patients and thus his knowledge of these communications and the treatment and diagnosis of his patients based on those communications are not imputed to Employer.

Vacated and remanded.

Judges WALKER and TIMMONS-GOODSON concur.