***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of plaintiff's alleged change in condition, an employment relationship existed between plaintiff and defendant.
3. Gallagher Bassett Services, Inc. was the third party administrator responsible for the administration of defendant's workers' compensation insurance at all times relevant to this claim.
4. Plaintiff's average weekly wage is $522.00, yielding a compensation rate of $348.02.
5. The parties stipulated to all of plaintiff's medical records.
6. Defendant paid all of plaintiff's authorized medical expenses related to his July 23, 2001 compensable injury, through August 15, 2002.
7. Plaintiff was assigned a five percent permanent partial disability rating to his back and was released at maximum medical improvement by Dr. Haworth in August 2002. Defendant paid permanent partial disability pursuant to a Form 21 approved by the Industrial Commission on August 20, 2002.
8. This issues before the Commission are whether plaintiff has undergone a compensable change in condition pursuant to N.C. Gen. Stat. § 97-47 and/or N.C. Gen. Stat. § 97-25.1; and if so, what disability benefits he is entitled to receive; whether plaintiff is entitled to have defendant pay for all related medical treatment for his alleged change in condition; and whether defendant is entitled to a credit for any benefits or monies received by plaintiff while he was claiming workers' compensation benefits. *Page 3 
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 49 years old. He completed the eleventh grade and received his GED. Plaintiff has performed various manual labor jobs over the years, including work in tobacco fields, a textile mill, and at a silo company. Plaintiff began working for defendant as a machine operator on May 20, 1976, and last worked on June 3, 2005. Plaintiff worked at defendant's manufacturing plant in Tabor City, North Carolina, which fabricated sheet metal and produced motorized units such as fans and blowers.
2. On July 23, 2001, plaintiff suffered a compensable injury by accident when he lifted a welding rig from a table. Dr. Barbara McDonald diagnosed and treated plaintiff for a lumbar strain following his injury. On February 18, 2002, Dr. McDonald found that plaintiff reached maximum medical improvement and that he was able to return to work without any physical restrictions. Dr. McDonald also rated plaintiff with a five percent permanent impairment to his back for which plaintiff has received compensation.
3. Plaintiff was compensated for the time he was out of work related to his July 23, 2001 accident. Defendant paid for all medical expenses related to plaintiff's compensable July 23, 2001 accident, through his release by Dr. McDonald.
4. Plaintiff continued to work for defendant, performing his regular duties without restrictions, for a period of more than two years following his February 18, 2002 release by Dr. McDonald. During this time, plaintiff did not request any additional medical treatment. *Page 4 
5. Plaintiff received compensation from defendant for the five percent permanent partial disability rating to his lumbar spine, pursuant to a Form 21 approved by the North Carolina Industrial Commission on August 20, 2002.
6. On February 25, 2004, plaintiff experienced an acute onset of low back pain and was referred to Dr. Charles Haworth, a neurosurgeon. Dr. Haworth examined plaintiff on March 1, 2004. At that time, plaintiff told Dr. Haworth that he did not think this injury was the same as his workers' compensation injury and that there was no specific event related to his flare-up of low back pain. Dr. Haworth reviewed a February 25, 2004 lumbar MRI, which revealed degenerative disc disease at L3-4, L4-5, and L5-S1. Dr. Haworth assessed right L5-S1 radiculopathy and ordered a CT scan and a lumbar myelogram. Based on the test results, on April 23, 2004, Dr. Haworth added a diagnosis of a right-sided ruptured disc at L5-S1 and recommended surgery.
7. On June 9, 2004, Dr. Haworth performed a right L4-L5 partial hemilaminectomy and a right L5-S1 partial hemilaminectomy and microdiscectomy on plaintiff.
8. On August 27, 2004, Dr. Haworth found that plaintiff had reached maximum medical improvement and released him to return to work without restrictions, effective August 30, 2004.
9. On September 2, 2004, plaintiff returned to work for defendant at full duty, without restrictions. Plaintiff continued to work for defendant until he was laid off when the Tabor City plant closed on June 3, 2005.
10. Since June 3, 2005, plaintiff has been self-employed and worked as owner, operator, and supervisor of Southern Pool Service Supplies. *Page 5 
11. Pursuant to an order, defendant arranged for plaintiff to be examined by Dr. Haworth on November 10, 2006. Plaintiff told Dr. Haworth that he had flare-ups of pain that started right after he stopped working and following a severe sneeze around September 19, 2006. Dr. Haworth reviewed spine films and an MRI performed on September 21, 2006, and assessed plaintiff with pre-existing degenerative disc disease and a recurrent disc herniation on the right at L5-S1.
12. Dr. Haworth testified that plaintiff's symptoms and exam in 2004 were different, and that "everything was different," three years after his 2001 injury. Dr. Haworth explained that in 2004, plaintiff suffered a new and unrelated disc herniation, which most likely occurred during the week of February 25, 2004. However, the Commission finds that plaintiff presented no evidence that he suffered any work-related injury by accident during the week of February 25, 2004.
13. Dr. Haworth testified that after comparing the 2001 and 2004 MRIs, he did notice a change in plaintiff's medical condition, but felt the changes were a "new" and "different" problem. Dr. Haworth opined, "I think he might have ruptured the disk at L5-S1 the week before I saw him." Dr. Haworth stated that the 2001 lumbar MRI showed no evidence of a disc bulge at L5-S1, and that it was impossible for him to say that there was some kind of delayed reverberation through plaintiff's body relating to the 2001 injury that suddenly caused plaintiff to rupture the disc in 2004.
14. In September 2006, Dr. Adam Brown saw plaintiff for an independent medical evaluation. Dr. Brown testified that he was confused about the history of plaintiff's treatment and that he was under the impression that plaintiff treated consistently for low back symptoms from his July 23, 2001 compensable injury until the present date. Dr. Brown thought it was *Page 6 
unusual and significant if plaintiff had a long gap in treatment and he was uncomfortable when he was asked to give opinions based upon assumptions that were not supported by his recollection of the information. As a result, the Commission gives greater weight to the opinions of Dr. Haworth than to the opinions of Dr. Brown.
15. Dr. Haworth testified and the Commission finds that plaintiff's 2004 low back condition and the 2006 recurrence are not related to his July 23, 2001 compensable injury by accident. Plaintiff's initial diagnosis in 2001 was a back strain; however, the problem he subsequently developed in 2004 was a disc herniation. Thus, the evidence of record fails to support a causal link between plaintiff's July 23, 2001 compensable low back strain and his 2004 and 2006 L5-S1 disc herniation injuries.
16. Plaintiff received short-term disability benefits from defendant's solely employer-funded plan from mid-March 2004 through July 12, 2004, in the amount of $3,148.20.
17. Plaintiff received unemployment benefits for a period of 17 weeks following his lay off on June 3, 2005.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 23, 2001, plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 *Page 7 
(1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699
(1970). The North Carolina Court of Appeals stated in Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. In Reinninger v.Prestige Fabricators, Inc., 136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and that the Parsons presumption applies. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. review improvidentlyallowed, 360 N.C. 587, 634 S.E.2d 887 (2006).
3. In this case, plaintiff alleges that his back condition in 2004 and 2006 was a change of condition from his original July 23, 2001 compensable injury, in which a Form 60 Agreement was filed. TheParsons presumption applies in this case and thus, the burden shifts to defendant to prove that the medical treatment plaintiff required in 2004 and 2006 was not directly related to his compensable injury. Based on the greater weight of the medical evidence of record, the Commission finds that defendant did rebut the Parsons presumption through the expert medical testimony of Dr. Haworth, who testified that plaintiff's 2004 low back condition *Page 8 
and the 2006 recurrence are not related to plaintiff's July 23, 2001 compensable injury by accident. Parsons v. Pantry, Inc., supra.
4. Any change in plaintiff's wage earning capacity is a result of his back condition in 2004 and 2006, which is not causally related to his compensable injury by accident. Therefore, plaintiff has not sustained a change of condition as provided by N.C. Gen. Stat. § 97-47 and is entitled to no further disability compensation.
5. Plaintiff is not entitled to additional medical compensation for his 2004 and 2006 back condition. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. In that plaintiff has not sustained a change of condition under N.C. Gen. Stat. § 97-47, plaintiff's claim for additional workers' compensation benefits must be and is hereby DENIED.
2. The parties shall pay their respective costs due the Commission. Defendants shall pay all expert witness fees previously approved.
This 25th day of March, 2008. S/
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/
 BERNADINE S. BALLANCE
 COMMISSIONER
S/
 CHRISTOPHER SCOTT
 COMMISSIONER *Page 1